SO ORDERED: March 31, 2023.



James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JUSTIN D. SHIREMAN and | ) | Case No. 20-05743-JMC-7 |
| ASHLEY RENAE SHIREMAN, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| FARM CREDIT MID-AMERICA, PCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 21-50054 |
| | ) | |
| JUSTIN D. SHIREMAN and | ) | |
| ASHLEY RENAE SHIREMAN, | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY DENYING SUMMARY JUDGMENT

THIS ADVERSARY PROCEEDING comes before the Court on *Farm Credit Mid-America, PCA's Motion for Summary Judgment* filed by Farm Credit Mid-America, PCA ("Plaintiff") on July 7, 2021 (Docket No. 11) (the "Motion"). The Court, having reviewed the Motion, the *Designation of Evidence* filed by Plaintiff on July 7, 2021 (Docket No. 12), the *Brief*

*in Support of Farm Credit Mid-America, PCA's Motion for Summary Judgment* filed by Plaintiff on July 7, 2021 (Docket No. 13) (the "Brief"), *Defendants' Response to Plaintiff's Motion for Summary Judgment* filed by Justin D. Shireman and Ashley Renae Shireman ("Debtors") on September 7, 2021 (Docket No. 17) (the "Response"), *The Shiremans' Designation of Evidence* filed by Debtors on September 7, 2021 (Docket No. 16), the *Reply in Opposition to Defendants' Response to Plaintiff's Motion for Summary Judgment and in Support of Farm Credit Mid-America, PCA's Motion for Summary Judgment* filed by Plaintiff on September 21, 2021 (Docket No. 18) (the "Reply"), *Farm Credit Mid-America, PCA's Complaint to Except Debt from Discharge and to Deny Discharge* filed by Plaintiff on May 21, 2021 (Docket No. 1) (the "Complaint"), the *Answer to Complaint* filed by Debtors on June 22, 2021 (Docket No. 9) (the "Answer"), and all of the designated evidence, and being otherwise duly advised, now **DENIES** the Motion.

<u>Summary Judgment Standard</u>

Plaintiff moves the Court to enter summary judgment in its favor and against Debtors pursuant to Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

To obtain summary judgment, Plaintiff must show that there is no genuine dispute as to any material fact and that Plaintiff is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(a).  The burden rests on Plaintiff, as the moving party, to demonstrate that there is an absence of evidence to support the case of Debtors, the nonmoving parties.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).  After Plaintiff demonstrates the absence of a genuine issue for trial, the responsibility shifts to Debtors to "go beyond the pleadings" to cite evidence of a genuine issue of material fact that would preclude summary judgment.  *Id*. at 324,

106 S.Ct. at 2553.  If Debtors do not come forward with evidence that would reasonably permit the Court to find in Debtors' favor on a material issue of fact (and if the law is with Plaintiff), then the Court must enter summary judgment against Debtors.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56 (1986); *Celotex*, 477 U.S. at 322-24, 106 S.Ct. at 2552-53; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52, 106 S.Ct. 2505, 2511-12 (1986)).

*Procedural Background*

In the Complaint, Plaintiff alleges (1) that a debt owed by Debtors to Plaintiff is a non-dischargeable debt under 11 U.S.C. § 523(a)(2)(B);[1] and (2) that Debtors should be denied a discharge under §§ 723(a)(3) and (5).  By the Motion, Plaintiff seeks summary judgment on the § 523(a)(2)(B) claim and §§ 723(a)(3) and (5) claims.

*Exceptions to Discharge*

Exceptions to discharge under § 523 "are to be construed strictly against a creditor and liberally in favor of the debtor."  *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985).  "The burden is on the objecting creditor to prove exceptions to discharge."  *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (citation omitted).  The burden of proof required is a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991).

*Reasoning:  § 523(a)(2)(B)*

Section 523 provides, in relevant part:

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
   …

---

[1] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> ...
> > (B) use of a statement in writing –
> > (i) that is materially false;
> > (ii) respecting the debtor's or an insider's financial condition;
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv) that the debtor caused to be made or published with intent to deceive ... .

"In order to prevail on a claim under ... § 523(a)(2)(B), a creditor must prove by a preponderance of the evidence that a debtor made, with an intent to deceive, a materially false written statement regarding his financial condition and that the creditor relied on that statement." *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995).

"Material falsity has been defined as 'an important or substantial untruth.' " *In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985) (citations omitted). "A recurring guidepost used by courts has been to examine whether the lender would have made the loan had he known of the debtor's true financial condition." *Id.* (citations omitted). This guidepost is sometimes referred to as the "*causa sine qua non*" or "but for" test. *Selfreliance Fed. Credit Union. v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir. 1990). Courts have also described a materially false statement as "one that paints a substantially inaccurate picture of a debtor's financial condition by misrepresenting information of the type which normally would affect the decision to grant credit." *Midwest Cmty. Fed. Credit Union v. Sharp (In re Sharp)*, 357 B.R. 760, 765 (Bankr. N.D. Ohio 2007) (citations omitted).

"[A] statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling,* -- U.S. --, 138 S.Ct. 1752, 1761, 201 L.Ed.2d 102 (2018).

"The reasonableness of a creditor's reliance should be determined on a case by case basis." *Webster Bank, Nat'l Ass'n v. Contos (In re Contos)*, 417 B.R. 557, 566 (Bankr. N.D. Ill. 2009) (citing *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989)).

> The Seventh Circuit has recognized that, in considering the reasonableness of a creditor's reliance, the court should not undertake a subjective evaluation and judgment of a creditor's lending policy and practices, nor use the requirement to second-guess a creditor's lending decisions. So while the concept of reasonable reliance does not generally require creditors to conduct an investigation prior to entering into agreements with prospective debtors, a lender may not ignore evidence of deceit and expect the court to later grant an exception to the debtor's discharge.

*Peoples Tr. and Sav. Bank v. Hanselman (In re Hanselman)*, 454 B.R. 460, 465 (Bankr. S.D. Ind. 2011) (internal quotations and citations omitted). "Two factors to consider when determining whether a creditor's reliance was reasonable are (1) whether the creditor's standard practices in evaluating credit-worthiness were followed and (2) whether there existed a 'red flag' that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate." *Id.* at 464-65 (citing *Contos*, 417 B.R. at 566).

"The law recognizes the duty of each to refrain from even attempted deceit of another with whom he deals, and the right of the latter to assume that he will do so ... ." *N. Tr. Co. v. Garman (In re Garman)*, 643 F.2d 1252, 1260 (7th Cir. 1980) (quotation omitted). Courts have noted that "actual intent is only rarely ascertainable by direct evidence as a debtor is unlikely to ever admit acting in a fraudulent manner. Consequently, like with other matters where the debtor's state of mind is placed at issue, the use of circumstantial evidence is usually necessary to determine whether the debtor acted with the requisite intent to deceive." *Sharp*, 357 B.R. at 767 (citation omitted). For that reason, "[w]hile a creditor can prove intent to deceive through direct evidence, … it may also be inferred where 'a person knowingly or recklessly makes a false representation which the person knows or should know will induce another to make a loan.' "

*Hanselman*, 454 B.R. at 465-66 (quoting *Sheridan*, 57 F.3d at 633). "A debtor's intent to deceive may also be demonstrated by showing reckless indifference to, or reckless disregard for, the accuracy of the information in a financial statement." *Contos*, 417 B.R. at 565 (citation omitted). In addition, a debtor's mere "unsupported assertions of honest intent will not overcome the natural inferences from admitted facts." *Howard,* 73 B.R. at 700 (citing 3 COLLIER ON BANKRUPTCY, ¶ 523.09, at 523–62 (L. King, 15th ed.)).

In supporting and opposing the Motion, Plaintiff and Debtors focus on the same "statement[s] in writing" – the documents the parties refer to as the Balance Sheets.[2] The parties do not dispute (1) that the Balance Sheets paint an inaccurate picture of Debtors' financial condition at the time they were delivered to Plaintiff; and (2) that Plaintiff reasonably relied on the Balance Sheets in making the loans. Whether Debtors made or published the Balance Sheets "with intent to deceive" Plaintiff seems to be where the dispute primarily lies.

Plaintiff argues that such intent is shown by Debtors' including assets on the Balance Sheets that they do not own for the purpose of inducing Plaintiff into loaning Debtors money (Brief, pp. 12-14).[3] Plaintiff further argues, in essence, that Debtors are foreclosed from advancing any contrary evidence regarding intent because, in the *Stipulation Resolving Plaintiff's Motion for Pre-Judgment Possession of Collateral and Order Requiring Defendants to Appear at Hearing* filed in the cause captioned *Farm Credit Mid-America, PCA v. Shireman,* Cause No. 16D01-1801-PL-000039 pending before the Decatur Superior Court (the "State Court Stipulation"), Debtors "represented to Farm Credit they owned the collateral listed on the Balance Sheet Summary" (Reply, pp. 3-6). Such circumstantial evidence of intent is, for

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Brief.

[3]    All references to the pleadings include the underlying designated evidence referenced therein.

summary judgment purposes, sufficient to shift the responsibility to Debtors to "go beyond the pleadings" to cite evidence of any asserted genuine issue of material fact.

Debtors argue that they did not intend to deceive Plaintiff; rather, they completed the Balance Sheets with the assistance and under the direction of Plaintiff's representative(s) and that Plaintiff's representative(s) told Mr. Shireman to include equipment or other property he borrowed or used for farming even if he did not own such property (Response, pp. 3-9, 12-15). Debtors further argue that Mr. Shireman told Plaintiff that he had life insurance policies (not the Justin IRA), one of which had a cash value approximately equal to the amount listed for the IRA, and that inclusion of the Justin IRA was a "typo" on the part of Plaintiff (Response, pp. 6, 14). They also note Ms. Shireman's lack of involvement in the preparation and/or delivery of the Balance Sheets (Response, pp. 3-10, 12-15).

Having reviewed the designated evidence and the arguments of the parties, the Court concludes that whether Debtors intended to deceive Plaintiff by making or producing materially false Balance Sheets is a genuine issue of material fact. Therefore, summary judgment is inappropriate for claims arising under § 523(a)(2)(B).

*Denial of Discharge*

"Consistent with the 'fresh start' policy underlying the [Bankruptcy] Code, these [§ 727(a)] exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. It is also important, however, to recognize that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (internal citations omitted). "The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (citation omitted). The

grounds for denial of discharge under § 727(a) must be established by a preponderance of the evidence. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th Cir. 1999). "The party objecting to a debtor's discharge has the burden of proving the objection." *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 237 (Bankr. N.D. Ill. 2005) (*citing* Fed. R. Bankr. P. 4005; *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir. 1983)).

> Section 727 provides, in relevant part:
>
> (a) The court shall grant the debtor a discharge, unless –
> ...
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
> ...
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities ... .

*Reasoning: § 727(a)(3)*

"The purpose of § 727(a)(3) is 'to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs.' " *Scott*, 172 F.3d at 969 (citation omitted).

> Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present. Section 727(a)(3) ensures that trustees and creditors will receive sufficient information to enable them to trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.

*Juzwiak*, 89 F.3d at 427-28 (internal quotations and citations omitted). "[C]reditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation." *Id.* at 430 (citations omitted).

"The completeness and accuracy of a debtor's records are to be determined on a case-by-case basis, considering the size and complexity of the debtor's financial situation." *Self*, 325 B.R. at 241 (citation omitted). "Courts should consider the sophistication of the debtor, his educational background, his business experience and acumen, and his personal financial structure." *Id.* (citation omitted).

Plaintiff has three bases for its assertions that Debtors' discharge should be denied pursuant to § 727(a)(3): (1) Debtors falsified the Balance Sheets; (2) they have been unable or unwilling to produce any records that support the value of their marital residence in the Balance Sheets; and (3) they concealed, destroyed or failed to keep or preserve any records that can account for the current location or disposition of the Missing Collateral (Brief, p. 16). In their Response, Debtors focus on recordkeeping, essentially arguing that while they were not the best record keepers, they turned over what records they had, including check statements, paystubs, taxes and disorganized records stored in various boxes (Response, pp. 16-17). Moreover, Ms. Shireman was not involved in Mr. Shireman's farming activities and therefore was not required to keep farm-related records (Response, pp. 15-16). Debtors also argue that Plaintiff "could have easily ascertained the Shiremans' financial condition due to the documents provided the Bankruptcy Trustee and the records provided pursuant to the Plaintiff's request for production" (Response, pp. 16-17). These arguments are in addition to the circumstances Debtors described in the Response regarding the preparation of the Balance Sheets and Plaintiff's representative's involvement therein (Response, pp. 3-11).

Even if the Court were to decide at the summary-judgment stage that Debtors concealed, destroyed, falsified or failed to keep or preserve any recorded information from which Debtor's financial condition might be ascertained, which it is not doing, the Court would have to

determine whether such act or failure to act was justified *under all of the circumstances of the case*. When the Court considers all of the circumstances raised in the pleadings, the Court concludes that there may well be one or more genuine issues of material fact regarding what *all of the circumstances of the case* are and whether Debtors' actions or inactions were justified. Accordingly, the Court will not grant summary judgment on the § 727(a)(3) claim.

*Reasoning: § 727(a)(5)*

"Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Martin*, 698 F.2d at 886 (citations omitted). "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several [Bankruptcy] Code provisions meant to 'relieve [] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor.'" *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004) (citation omitted).

> There are two stages of proof under § 727(a)(5). First, the party objecting to discharge has the burden of proving that the debtor at one time[4] owned substantial and identifiable assets that are no longer available for his creditors. Second, if the party objecting to the discharge meets that burden, then the debtor is obligated to provide a satisfactory explanation for the loss. What constitutes a satisfactory explanation for § 727(a)(5) purposes is left to the discretion of the court. A debtor's explanation must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions ... . Instead it must be a good faith explanation of what really happened to the assets in question. To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets. Although the explanation does not necessarily need to be comprehensive, it must meet two criteria in order to be

---

[4] "The inquiry under § 727(a)(5) is not limited to events or transactions that have occurred within a specified number of months or years before the bankruptcy filing." *Self*, 325 B.R. at 250 (citation omitted). "Section 727(a)(5) itself prescribes no limitations period, but courts have held that the assets in question must at least have belonged to the debtor 'at a time not remote in time to case commencement.'" *Olbur*, 314 B.R. at 741 (citations omitted). The exact time a court should look back "depends on the case; there is no hard and fast rule." *Id.* (citation omitted).

deemed satisfactory. First, it must be supported by at least some documentation. Second, this documentation must be sufficient to eliminate the need for the court to speculate as to what happened to all the assets.

*Self*, 325 B.R. at 250-51 (internal quotations and citations omitted). It is not "necessary for the debtor to justify 'the wisdom of the … disposition of assets.' What is relevant is 'the completeness and truth' of his explanation." *Olbur*, 314 B.R. at 741 (internal citations omitted).

The first stage of proof required for Plaintiff to prevail on its claim under § 727(a)(5) is that Debtors owned substantial and identifiable assets that are no longer available for Plaintiff. Because Debtors "now claim, in their Chapter 7 Bankruptcy petition and in their testimony at the 2004 Exams, to no longer possess or even worse to never have owned [the Missing Equipment, 2015 Inputs, Crops, 2017 Inputs and Justin IRA] without any explanation as to why" (Brief, p. 17), Plaintiff relies on the State Court Stipulation as proof that Debtors have already admitted that they own (or owned) all of the assets listed in the Balance Sheets (Reply, p. 10-11). As to the second stage of proof, Plaintiff argues that Debtors have not and cannot satisfactorily explain the loss of certain assets or the value of such assets (Brief, pp. 16-18). The following chart describes the arguments of Plaintiff, on the one hand, regarding the loss of assets / value and the attempts of Debtors, on the other hand, to "satisfactorily" explain such losses (and describe their ownership interest in various assets):

| Plaintiff | Debtors |
|---|---|
| Loss of value in the marital home (Brief, p. 16) | The value used on the Balance Sheets was determined by Plaintiff, and the value used in the bankruptcy schedules was the most recent tax assessment value (Response, pp. 10-11, 19) |
| Loss of the Missing Equipment (Brief, p. 17; Reply, p. 11) | Not all of the equipment listed in the Balance Sheets was owned by Debtors; Mr. Shireman was told by Plaintiff's representative to include all equipment he borrowed or used in his farming operations on the Balance Sheets (Response, pp. 4-5, 7, 10, 14, 18) |

| | |
|---|---|
| Loss of the 2015 Inputs, 2017 Inputs and the Crops (Brief, p. 17; Reply, p. 11) | Inputs were used and crops were sold (Response, pp. 6, 7, 9, 10, 14, 15, 19) |
| Loss of the Justin IRA (Brief, p. 17; Reply, p. 11) | Mr. Shireman did not own nor represent that he owned an IRA; this may be a typo or there may be confusion on Plaintiff's representative's part between an IRA and the cash value of Mr. Shireman's life insurance policy; Mr. Shireman owned an IRA, which he cashed out prior to filing bankruptcy, but it did not have approximately $24,000 in it (Response, pp. 6, 9, 14, 18) |

Whether Debtors owned all of the property listed on the Balance Sheets is a genuine issue of material fact. Debtors have further gone beyond the pleadings and cited evidence to show there is a genuine issue of material fact as to whether Debtors have satisfactorily explained any loss of assets / value. Therefore, the Court will not grant summary judgment with respect to Plaintiff's § 727(a)(5) claim.

*Conclusion*

For the reasons set forth above, the Court denies the Motion.

The Court sets a telephonic status conference for this adversary proceeding on **April 13, 2023 at 10:15 a.m. EDT**. To participate, parties should call (888) 273-3658, passcode 6349352. At such status conference, the Court intends, among other things, to schedule this adversary proceeding for trial.

IT IS SO ORDERED.

# # #